

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00195-CR

---

AUGUSTIN CANTU III                                                         APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1293877D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Augustin Cantu III challenges the sufficiency of the evidence to support his conviction of aggravated assault with a deadly weapon and argues that his twenty-five-year sentence is excessive. We affirm.

The first paragraph of Cantu's indictment alleged that he had intentionally or knowingly caused bodily injury to his wife by striking her with his hand and

---

[1]*See* Tex. R. App. P. 47.4.

used or exhibited a deadly weapon (a sword), and the second paragraph alleged that he intentionally or knowingly threatened his wife with imminent bodily injury while using or exhibiting a deadly weapon (a sword). The trial court heard the evidence and granted Cantu's motion for directed verdict on the first paragraph. The trial court denied Cantu's motion on the second paragraph, found that a deadly weapon had been used based on the sword's capability in the manner of its use or intended use of causing death or serious bodily injury, convicted Cantu of aggravated assault with a deadly weapon, and sentenced him to twenty-five years' confinement.[2] See Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 2011 & Supp. 2013) (defining "deadly weapon" as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury), § 22.01(a)(2) (West 2011 & Supp. 2013) (defining assault as intentionally or knowingly threatening another with imminent bodily injury), § 22.02(a)(2) (West 2011) (defining aggravated assault as committing assault while using or exhibiting a deadly weapon).

In his first issue, Cantu argues that the evidence is insufficient to show that he intended to assault his wife with the sword and claims that while he "may have picked up the sword and made idle threats, he never came close to hurting [her]

_____

[2]Cantu pleaded true to, and the trial court found true, the repeat offender notice in the indictment, which listed a 2001 conviction for sexual assault of a child under seventeen years old, resulting in a punishment range of five to ninety-nine years' confinement or life. See Tex. Penal Code Ann. §§ 12.32(a), 12.42(b) (West 2011).

with the sword." The record reflects that Cantu and his wife S.C. had a fight that lasted several hours. During the fight, Cantu yelled at her, punched her in the hip, ripped her shirt, called her "ugly names," tossed juice on her, and sprayed her with water from a spray bottle. At some point, S.C. dialed 911 on her phone, and part of the argument was recorded and admitted into evidence, along with photographs of her bruises.

With regard to Cantu's use of the sword, S.C. testified,

> And the next thing I know, he's standing up with [the sword], and he said[,] "Did you call 9-1-1?" And I said, "Look at my phone." And he couldn't really look at it because he's got the sword in his hand and he's got it raised up in the air, and he said, "Did you call 9-1-1?" And I said, "Yes, I did." And he says, "Well, I ain't got nothing to lose right now," and he says, "I'm just going to chop you into little pieces and chop your head off."

S.C. did not recall seeing Cantu remove the sword from its sheath at that time but said that his words frightened her. S.C. said that the sword was out of its sheath when Cantu asked her again if she had called 911.

S.C. said that Cantu told her to call 911 back and tell them it was a mistake and that she did not need them. She called 911 but instead reported that Cantu had told her to call, that he had punched her earlier, that she did need them, that he was leaving, and that he had put his sword in the closet.

Cantu left before Fort Worth Police Officers Joshua Yates and Johnny Kovar arrived. S.C. talked to them, and Officer Kovar retrieved the sword from the closet. Officer Yates stated that the sword was a weapon that could cause serious injury, and Officer Kovar said that when removed from its sheath, the

3

sword appeared to be sharp and capable of causing death or serious bodily injury. The trial court admitted the sword into evidence.

The trial court admitted Cantu's recorded police interview into evidence. In the recording, Cantu admitted that he ripped S.C.'s shirt, said that he did not pull the sword all the way out of its sheath, and said that he realized that he had scared S.C. when she started praying upon his displaying the sword but that he did not intend to scare her.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the weight and credibility of the evidence. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768.

Here, the trial court could have found beyond a reasonable doubt that Cantu had intentionally or knowingly threatened S.C. with imminent bodily injury

4

while exhibiting his sword during their argument when he threatened to "chop [her] into little pieces and chop [her] head off," that she perceived this behavior as a threat, and that the sword was a deadly weapon. Therefore, we conclude that the evidence is sufficient, and we overrule Cantu's first issue.

In his second issue, Cantu argues that his sentence is cruel, unusual, disproportionate, a violation of both the Eighth Amendment to the federal constitution and article I, section 13 of the state constitution, and "tantamount of a life sentence" because of his age.[3] However, Cantu did not object to his sentence at pronouncement and, while he filed a motion for new trial raising the issue, there is no indication that he presented the motion to the trial court. *See* Tex. R. App. P. 21.6; *Means v. State*, 347 S.W.3d 873, 874 (Tex. App.—Fort Worth 2011, no pet.) (stating that appellant must present motion raising punishment complaint to preserve error). Therefore, we overrule Cantu's second issue as unpreserved. *See* Tex. R. App. P. 33.1(a).

Having overruled both of Cantu's issues, we affirm the trial court's judgment.

---

[3]Cantu also contends that S.C. said that she still loved him, there was no evidence of injury, and "even five years would have been excessive punishment" under these facts.

PER CURIAM

PANEL:  MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 3, 2014